UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | |
|---|---|
| MIKE NOBLE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Civil Action No. 3: 08-76-DCR |
| V. | ) ) ) |
| SERCO, INC., | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Mike Noble has filed a Motion for Notice to Potential Plaintiffs and Conditional Certification. [Record No. 21] This ultimately resulted in a motion by Defendant Serco, Inc. to strike Noble's motion, for sanctions and other extraordinary relief, and for a protective order regarding the Plaintiff's outstanding discovery requests. [Record No. 54] For the reasons set forth below, Noble's motion will be granted and Serco's motion will be denied.

**I.    Background**

Noble seeks the Court's authorization to notify potential plaintiffs of the instant action and of their right to "opt in" to the suit. He originally proposed that the class of potential plaintiffs be defined as "[a]ll persons employed as Recruiters for Serco, Inc., regardless of precise title, during the three-year period immediately preceding the filing of [the] Motion [for notice and conditional certification]." [Record No. 21, p. 2] Serco's response exhaustively described the six positions it believed Noble's proposed class definition would encompass and

argued that the differences among the various types of "recruiters" and applicable defenses would make a collective action unmanageable and inappropriate. [Record No. 44] In his reply, "[u]sing the terminology of the Defendant," Noble stated that he intended the proposed class to include only "persons who held the position Military Recruiter I or Military Recruiter II." [Record No. 50, p. 1] Serco then moved the Court to strike Noble's motion and for sanctions, arguing that Noble had "tactically limit[ed] the scope of the putative class," thereby prejudicing Serco. [Record No. 54, p. 1-2] Noble argued in response that Serco sought only to delay the proceedings and had refused his offers of accommodation regarding discovery. [Record No. 56] Serco replied that it had tried to resolve the issue with Noble prior to involving the Court, but that Noble had been uncooperative. [Record No. 59] Because Serco's Motion for Protective Order, to Strike, for Sanctions, and for Other Extraordinary Relief [Record No. 54] arose out of Noble's Motion for Notice and Conditional Certification [Record No. 21], the two motions will be considered together.

##### II. Legal Analysis

Section 216(b) of the Fair Labor Standard Act ("FLSA") provides that employees who have been denied time-and-a-half compensation for overtime work in violation of the Act may sue on behalf of themselves and on behalf of "similarly situated" employees. 29 U.S.C. § 216(b). The phrase "similarly situated" is not defined in the FLSA or in case law; however, the Sixth Circuit has recognized that district courts typically "follow[] a two-stage certification process . . . to determine whether the opt-in plaintiffs and lead plaintiffs [are] similarly situated." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009); *see also Comer v. Wal-*

*Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The first stage, known as the "notice stage," occurs "at the beginning of discovery." *Comer*, 454 F.3d at 546. At this stage, the court determines whether the suit should be "conditionally certified" as a collective action so that potential opt-in plaintiffs can be notified of the suit's existence and of their right to participate. *See id.* at 546-47. The final certification decision is made at the second stage, "after all of the opt-in forms have been received and discovery has concluded." *Id.* (quotation omitted).

### A.     Noble's Motion for Notice and Conditional Certification

Noble asks the Court to conditionally certify this case as a collective action and authorize notice of the suit to potential opt-in plaintiffs. [Record No. 21, p. 2] Serco contends that Noble was premature in seeking conditional certification before any discovery has occurred. [Record No. 44, p. 3] However, while discovery may facilitate the conditional-certification decision to some degree, it is not required. The Sixth Circuit recently described the first stage of the certification process as follows: "After the initial conditional certification of the class, the parties enter[] into discovery." *O'Brien*, 575 F.3d at 583.

The Sixth Circuit thus clearly contemplates that the initial inquiry regarding whether the lead plaintiff and potential opt-in plaintiffs are similarly situated will generally occur prior to discovery, with the ultimate certification decision to be made after discovery is complete. *Id.* This approach is also followed in other circuits. *See, e.g.*, *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) ("[A]t the initial stage the district court's decision to certify a class is based primarily on pleadings and affidavits." (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled in part on other grounds by Desert Palace, Inc. v.*

*Costa*, 539 U.S. 90 (2003))); *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 389 (3d Cir. 2007) ("Conditional certification . . . *only* meant that there were *allegations* of class-wide discrimination.").

### i. Evidentiary Standard at the Notice Stage

Because the conditional-certification decision is generally made prior to or early in discovery, the plaintiff's evidentiary burden at this stage is not a heavy one. *Comer*, 454 F.3d at 547; *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260-61 (11th Cir. 2008) (quoting cases in which the notice-stage standard was described as "not particularly stringent," "fairly lenient," "not heavy," and "less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)"). Noble must demonstrate at this stage that there is a "'reasonable basis' for his claim that there are other similarly situated employees." *Morgan*, 551 F.3d at 1259. However, only a "modest factual showing" is required to authorize notice to potential plaintiffs, *Comer*, 454 F.3d at 547, and Noble "must show only that his position is similar, not identical, to the positions held by the putative class members." *Id.* at 546-47 (quotation omitted).

Inasmuch as the standard at the notice stage is not demanding, the initial inquiry "typically results in conditional certification of a representative class." *Id.* (quotations omitted). Some courts "require[] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). However, the Sixth Circuit recently held that a plaintiff need not show a "'unified policy' of violations" even at the final-certification stage. *See O'Brien*, 575 F.3d at 584 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996)).

Several courts have held that, at the notice stage, "[a] court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2008 U.S. Dist. LEXIS 108060, at *11 (N.D. Ohio June 9, 2008) (quotation omitted) (citing cases). Noble's Complaint and the declarations attached to his motion for notice and conditional certification, as well as the opt-in consent forms filed in this litigation, meet his burden of demonstrating that the alleged FLSA violations are not "purely personal" to him.

### ii. Declarations by Other Serco Employees

Attached to Noble's motion are four declarations, one by Noble himself and three by other former Serco "civilian recruiters." [Record No. 21, Exs. 2, 3, 4] Serco asserts that the declarations are inadmissible because they are not based on personal knowledge and contain conclusory allegations. [Record No. 44, p. 17-20] Each declarant (other than Noble) stated that "[w]hile working at SERCO, [he] got to know several other civilian recruiters." [Record No. 1, Exs. 2, 3, 4, ¶¶ 8] It is reasonable to infer that the declarants would have talked to these other recruiters about their job duties, their pay structures, their hours worked, and whether they were paid for overtime hours, as stated in the declarations. Thus, the declarants certainly could have personal knowledge regarding these subjects. Further, while the allegations in the declarations are not highly specific, it is not necessary for the declarants to provide such details as the dates and times they worked overtime hours for which they were not compensated.

Finally, while the declarations may accurately be described as "cookie-cutter," the allegations contained therein, in conjunction with the allegations in Noble's Complaint and the opt-in consents filed thus far, are substantial enough to warrant conditional certification. Serco correctly notes that some courts view such "cookie-cutter" declarations with suspicion. [Record No. 44, p. 18-19] However, where the declarants have had similar experiences, it is not necessary that each of them come up with a creative way to state the same allegations. Indeed, at least one court faced with similar arguments has held that uniformity among plaintiffs' statements may itself be evidence supporting conditional certification:

> [The defendant] stresses that within each group of plaintiffs, the affidavits are nearly identical. [It] further characterizes the affidavits as "conclusory." The Court agrees that the affidavits are concise, and perhaps even somewhat sparse. But this does not render them insubstantial. In particular, the uniformity that [the defendant] derides is in the Court's view a substantial indicator in favor of the plaintiffs being similarly situated. There is no rule that requires plaintiffs to compose affidavits in their own words, without the assistance of counsel. In that light, the fact that many plaintiffs can agree on a single formulation as accurately describing their job duties is a strong indicator that certification is appropriate.

*Mathews v. ALC Partner, Inc.*, No. 2:08-CV-10636, 2009 U.S. Dist. LEXIS 75097, at *12-13 (E.D. Mich., Aug. 29, 2009).

### iii.   Manageability of Collective Action

Serco maintains that a collective action would be unmanageable in this case "due to the diverse nature of the putative class and the applicable defenses." [Record No. 44, p. 1] However, these arguments are premature. The Sixth Circuit recently listed as factors for consideration in *final* certification decisions the "factual and employment settings of the individual[] plaintiffs, the different defenses to which the plaintiffs may be subject on an

individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action." *O'Brien*, 575 F.3d at 584 (quotation omitted) (alterations in original). When a plaintiff has made the minimal showing required at the notice stage, the defendant "cannot overcome [the] [p]laintiff's showing by arguing that individual issues may dominate"; rather, that issue must be raised in a motion to decertify at the second stage of the certification process. *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 373 (E.D. Tenn. 2006); *see also Gallagher v. Lackawanna County*, No. 3:CV-07-0912, 2008 U.S. Dist. LEXIS 43722, at *27-28 (M.D. Pa. May 30, 2008) ("Where . . . plaintiffs have adduced sufficient evidence to meet step one's 'extremely lenient standard' for conditional certification, evidence offered by the defendant purporting to show plaintiffs are not similarly situated to absent class members, while significant after discovery and during the step-two analysis, does not compel denial of conditional certification."); *Simpkins v. Pulte Home Corp.*, No. 6:08-cv-130-Orl-19DAB, 2008 U.S. Dist. LEXIS 64270, at *16 ("In all but a handful of cases, the individual factual analysis is saved for the second stage of certification." (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001))). Additionally, the Sixth Circuit has held that it is improper for a district court to consider whether "individualized questions predominate[]" in determining whether plaintiffs are similarly situated for FLSA *final* certification purposes. *O'Brien*, 575 F.3d at 584-85. Thus, this is not a relevant consideration at the notice stage.

Serco cites *Morisky v. Public Service Electric & Gas Co.*, 111 F. Supp. 2d 493 (D. N.J. 2000), for the proposition that "the classification of a group of employees as exempt, that is not facially improper under the FLSA, cannot be a 'policy, plan or scheme' that supports a § 216(b)

claim." [Record No. 44, p. 32] However, *Morisky* is distinguishable. The court in that case, after outlining the two-step certification process, noted,

> This case is somewhat different. It is clearly beyond the first tier of the above analysis, as over 100 potential plaintiffs have already opted into this lawsuit. Further, pursuant to the most recent scheduling order . . . , discovery was to have been completed . . . well before the present motion was filed. It is appropriate, therefore, for the Court to apply a stricter standard in its analysis of the question before it[.]

*Id.* at 497-98 (footnote and citation omitted).

In summary, Noble has met the minimal standard applicable at this stage of the certification process. "Where a plaintiff has demonstrated a reasonable basis for the allegations of the complaint by filing declarations and consents from class members, a collective action is authorized, and notice should be issued." *Kerce v. West Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1358 (S.D. Ga. 2008) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996)). Noble's complaint contains substantial allegations of FLSA violations by Serco: namely, that Serco improperly classified Noble and other Serco employees with similar job duties as exempt from FLSA and thus failed to pay them overtime compensation. [Record No. 1] The declarations attached to the Motion for Notice and Conditional Certification and the opt-in consents filed thus far support these allegations. Conditional certification and notice to putative plaintiffs therefore is appropriate.

### B. Serco's Motion for Protection, for Other Extraordinary Relief, and for Sanctions

Because the Court will grant Noble's Motion for Notice and Conditional Certification, Serco's requests that the Court strike that motion and for sanctions against Noble in the amount

of costs incurred by Serco in responding to the motion and preparing its motion to strike are moot. Furthermore, the Court finds that sanctions for costs incurred in responding to Noble's discovery requests and protection from those requests are not appropriate. Serco's protestations that it misunderstood Noble's proposed class definition strike the Court as somewhat disingenuous. While Noble did not specifically state until his August 3 reply that he intended the proposed collective to include only Serco employees "who held the position Military Recruiter I or Military Recruiter II" [Record No. 50, p. 1], he had previously described Serco "recruiters" as persons who "spend most of their time calling on high school students, recent graduates, and similar groups . . . in an effort to schedule an appointment to meet with them and discuss enlisting in the Army." [Record No. 21, p. 10; *see also id.*, p. 3 ("Throughout their employment, Messrs. Noble, Robinson, Smith, Delgado, and the other Recruiters they worked with spent most of their time 'cold calling' high school students . . . from a list that was provided to them and trying to schedule an appointment to meet and discuss enlisting in the U.S. Army.") and Exs. 2, 3, 4] From these descriptions, it should have been clear to Serco that Noble did not intend to include Military Recruiter IIIs, whose responsibilities involved recruiting not high school students but individuals from other branches of the military,[1] or employees whose job

---

1   Serco describes Military Recruiter IIIs as having "a more specific focus" than Military Recruiter Is and IIs:

> [Military Recruiter IIIs] were responsible for: (1) recruiting individuals from the Navy or Air Force to join the Army after their enlistment period was finished, (2) facilitating the move of a National Guardsman to another National Guard location, (3) transitioning soldiers from active duty into the Arkansas Guard, and/or (4) developing market research associated with their recruiting efforts.

[Record No. 44, p. 7]

titles contained the word 'recruiter' but whose primary duty was not recruiting, such as Military Recruiter Supervisors and Military Recruiter Managers.[2] [Record No. 44, p.7] Serco's greater precision with regard to job titles is not surprising, since they were, of course, Serco's job titles to begin with.[3]

Serco's request that it be allowed to file a sur-reply will also be denied. As explained above, once a plaintiff has made the required "modest factual showing" at the notice stage, the defendant cannot prevent conditional certification by arguing that the plaintiff and potential opt-in plaintiffs are not similarly situated. *See White*, 236 F.R.D. at 373; *Gallagher*, 2008 U.S. Dist. LEXIS 43722, at *27-28. Thus, even if Serco drafted its original response to Noble's motion in the honest belief that he intended his proposed class definition to include all six positions with the word 'recruiter' in the title, a sur-reply tailored to the Military Recruiter I and II positions would be unavailing.

### III.    Conclusion

While Noble's showing that he is similarly situated to potential opt-in plaintiffs is not significant, it is sufficient to satisfy the low standard applicable at this stage of the case. If, after discovery is complete, it appears that Noble and the opt-in plaintiffs are not similarly situated,

---

2       According to Serco's descriptions, at least one of the positions, Military Recruiter Supervisor II, did not involve any actual recruiting whatsoever. [Record No. 44, p. 7 ("Military Recruiter Supervisor IIs were also station managers, but because they supervised four or more other recruiters, they were not assigned personal recruiting missions.")] Presumably Military Recruiter Managers, who "were in charge of an entire company," likewise would not have had recruiting duties. [*Id.*]

3       Serco's choice of wording in its response to Noble's conditional-certification motion suggests it understood that not every Serco employee with the word 'recruiter' in his or her job title actually *was* a 'recruiter' as Noble had defined that term. [Record No. 44, p. 6 ("Serco employed individuals in six different military recruiter *job titles*." (emphasis added))]

Serco may file a motion to de-certify, and the Court will determine at that time whether final certification is appropriate based on the information obtained through discovey.  Accordingly, it is hereby

**ORDERED** as follows:

(1)   Plaintiff Mike Noble's Motion for Notice and Conditional Certification [Record No. 21] is **GRANTED**.  The parties are ordered to meet and confer in an attempt to agree upon the proposed notice.  The proposed notice shall be filed within thirty (30) days of the date of this Memorandum Opinion and Order.  If the parties are unable to reach agreement on the form of the notice, they must contact the Court immediately to schedule a conference to resolve this issue.

(2)   Defendant Serco, Inc.'s Motion for Protective Order, to Strike, for Sanctions, and for Other Extraordinary Relief [Record No. 54] is **DENIED**.

(3)   The Plaintiff's motion for oral argument [Record No. 57] is **DENIED**.

This 28th day of September, 2009.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge